RENDERED: NOVEMBER 5, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0019-MR

EMOSHIA DUNCAN                               APPELLANT

|  | APPEAL FROM FAYETTE CIRCUIT COURT |
|---|---|
| v. | HONORABLE ERNESTO M. SCORSONE, JUDGE |
|  | ACTION NOS. 04-CR-00245-001 & 05-CR-00663 |

COMMONWEALTH OF KENTUCKY                APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, COMBS, AND MAZE, JUDGES.

MAZE, JUDGE: Emoshia Duncan appeals from an order of the Fayette Circuit Court denying his motion to vacate or correct his sentence pursuant to CR[1] 60.02(e). We conclude that the trial court abused its discretion by denying the

---

[1] Kentucky Rules of Civil Procedure.

motion because Duncan's sentence exceeded the maximum authorized by statute. Hence, we reverse and remand with directions to grant the motion and impose a new sentence within the statutory range.

On July 22, 2005, Duncan entered a conditional guilty plea to second-degree robbery, possession of a handgun by a convicted felon, first-degree fleeing or evading police, first-degree wanton endangerment, and being a persistent felony offender in the first degree. In exchange for his guilty plea, the Commonwealth agreed to dismiss several other felony charges and to recommend a total sentence of twenty-seven years' imprisonment. After accepting Duncan's guilty plea, the trial court imposed the recommended sentence. The Kentucky Supreme Court affirmed Duncan's conviction on the issues he reserved for appeal. *Duncan v. Commonwealth*, No. 2005-SC-0760-MR, 2006 WL 2456353 (Ky. Aug. 24, 2006).

No further pleadings appear in the record until January 14, 2020, when Duncan filed his current CR 60.02 motion. Duncan argued that his sentence exceeds the statutory twenty-year limit for aggregated sentences involving Class C or Class D felonies. *See* KRS[2] 532.110(1)(c) and KRS 532.080(6)(b). He also pointed to the holding in *McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010), which held such sentences void even when the defendant agreed to the

---

[2] Kentucky Revised Statutes.

sentence. *Id.* at 700-01. Consequently, Duncan argued that his sentence must be vacated and a new sentence of twenty years or less must be imposed.

The Commonwealth argued, and the trial court agreed, that the holding in *McClanahan* could not be applied retroactively. Since Duncan's sentence was valid under the case law at the time it was entered, the trial court concluded that Duncan was bound by the terms of his plea agreement. Duncan now appeals from the trial court's order denying his motion for relief under CR 60.02.

Duncan argues that he is entitled to relief under CR 60.02(e) because the sentence imposed is void as a matter of law. He first focuses on the language of KRS 532.110(1)(c), which provides as follows:

> (1) When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime . . . except that:
>
> (c) The aggregate of consecutive indeterminate terms *shall not exceed* in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years[.]

(Emphasis added.)

Duncan further notes that KRS 532.080(6)(b) provides, in pertinent part:

-3-

> If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of *which shall not be less than ten (10) years nor more than twenty (20) years*.

(Emphasis added.)

Both statutes were in effect at the time Duncan entered his plea. However, the controlling case law at the time allowed a defendant to waive the maximum aggregate sentence limitation in KRS 532.110(1)(c) that otherwise would operate to his benefit. *See Johnson v. Commonwealth*, 90 S.W.3d 39, 44 (Ky. 2002), *as modified* (Jan. 13, 2003) and *Myers v. Commonwealth*, 42 S.W.3d 594, 597 (Ky. 2001).

After Duncan entered his plea, the Kentucky Supreme Court revisited the holdings of *Johnson* and *Meyers* in *McClanahan*. As in the current case, the defendant in *McClanahan* was charged with multiple Class C and Class D felonies. The defendant entered a guilty plea agreeing to a combination of consecutive and concurrent sentences which included a "hammer clause." As long as the defendant complied with the conditions of his release, the defendant would receive a total of ten-years' imprisonment. But if the defendant breached those conditions, he would be subject to consecutive sentences totaling forty years. *McClanahan*, 308 S.W.3d at 696.

-4-

When the defendant failed to appear for final sentencing and incurred additional criminal charges, the court invoked the hammer clause and imposed a thirty-five year sentence. *Id.* at 697. On appeal, the defendant argued that the sentence exceeded the twenty-year maximum permitted by KRS 532.110(1)(c) and KRS 532.080(6)(b). The Kentucky Supreme Court recognized that, under *Johnson* and *Myers*, a defendant could waive the statutory maximum sentence. *McClanahan*, 308 S.W.3d at 701.

Nevertheless, the Court found nothing in the language of the statutes to suggest that the General Assembly intended to excuse plea agreements from the mandatory provisions regarding the maximum aggregate sentence. *Id.* The Court further held that a trial court has no authority to impose a sentence outside of the statutory range.

> Whether recommended by an errant jury or by the parties through a plea agreement, a sentence that is outside the limits established by the statutes is still an illegal sentence. We do not see how an illegal sentence set by a jury . . . does any more to "nullify the sentencing laws" than an illegal sentence imposed by a judge pursuant to a plea agreement. There is no sound rationale by which we should condemn the one as we condone the other. Under our Constitution, it is the legislative branch that by statute establishes the ranges of punishments for criminal conduct. It is error for a trial jury to disregard the sentencing limits established by the legislature, and no less erroneous for a trial judge to do so by the acceptance of a plea agreement that disregards those statutes.

*Id.*

Based on the holding of *McClanahan*, Duncan's twenty-seven year sentence would be clearly impermissible. However, there has been some question whether the holding is retroactive to sentences which became final before *McClanahan* was rendered. In an unpublished case, *Rothfuss v. Commonwealth*, No. 2010-CA-000117-MR, 2010 WL 3361769 (Ky. App. Aug. 27, 2010), this Court held that the holding of *McClanahan* may not be applied retroactively to guilty pleas which were valid at the time they were entered.

> We are aware that *Myers* and *Johnson* were recently overruled by our Supreme Court in *McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010), wherein the Court held any sentence imposed in excess of that allowed by KRS 532.110(1)(c) is void and unenforceable, regardless of whether the defendant had consented to such a sentence. However, the holding in *McClanahan* cannot be applied retroactively to justify the relief Rothfuss seeks. *See Leonard v. Commonwealth*, 279 S.W.3d 151, 160-61 (Ky. 2009) (generally, decisions are not applied retroactively). . . . Rothfuss has pointed us to no facts allowing us to conclude there are strong equities requiring a departure from the proscription against retroactive application of new decisions. To the contrary, Rothfuss has enjoyed a reduction in his charges from Class A felonies carrying the potential for a seventy-year term of imprisonment to Class C felonies carrying an actual sentence of only twenty-five years. In addition, Rothfuss is parole-eligible after serving twenty percent of his sentence rather than the eighty-five percent he would have been required to serve had he been convicted of the higher offenses. Finally, we note that although his conviction is nearly a decade old and he has had ample opportunity to do so, Rothfuss has not previously attacked his conviction and sentence on any

ground. Thus, we conclude equity does not demand retroactive application of *McClanahan*.

*Id.* at *2.

This Court has followed the holding in *Rothfuss* in three other unpublished cases. *Eads v. Commonwealth*, No. 2010-CA-001318-MR, 2012 WL 512487 (Ky. App. Feb. 17, 2012); *Hall v. Commonwealth*, No. 2015-CA-001315-MR, 2016 WL 1558505 (Ky. App. Apr. 15, 2016); and *Berry v. Commonwealth*, No. 2015-CA-001897-MR, 2017 WL 4712777 (Ky. App. Oct. 20, 2017). The trial court relied upon these cases in its conclusion that *McClanahan* cannot be applied retroactively to Duncan's sentence. Although we cannot fault the trial court for following this Court's interpretation, we must conclude that the conclusion was erroneous as a matter of law.

We agree with the trial court that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Leonard*, 279 S.W.3d at 159 (quoting *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 1075, 103 L. Ed. 2d 334 (1989)). But in *Phon v. Commonwealth*, 545 S.W.3d 284 (Ky. 2018), the Kentucky Supreme Court distinguished between a new rule of procedural or constitutional law and a subsequent interpretation of a statute that was in effect at the time of sentencing.

*Id.* at 301.  In the case of the latter, the Court held that the new interpretation of a sentencing statute must be applied retroactively.  *Id.*

The Court in *Phon* then went on to discuss the rule in *McClanahan* that a trial court lacks jurisdiction to impose a sentence outside the limits established by the statutes.  *Id.* at 302 (citing *McClanahan*, 308 S.W.3d at 701).  Thus, when a court imposes a sentence outside of the statutorily permissible range, the issue is jurisdictional and subject to correction at any time.

> It is logical that such illegal sentences are considered void and correctable at any time, as contrasted to an attack on the underlying conviction.  If the sentence goes beyond the jurisdiction of the court imposing it, then it must be considered a legal nullity.  The Supreme Court in Tennessee has determined that "trial courts lack jurisdiction to impose sentences not available under the sentencing statutes governing the case." *Edwards* [*v. State*, 269 S.W.3d 915, 921 (Tenn. 2008)].  In such Circumstances [sic], the "sentences are illegal, amounting to jurisdictional defects' that render the judgments imposing them void[.]" *Id.* (internal citation omitted).  Even a guilty plea cannot waive this particular error because it cannot "confer jurisdiction upon the trial court to impose a sentence not available under governing statutes." *Id.* (internal citations omitted).

*Id.* at 305-06.

Because the sentence imposed in *Phon* was not statutorily authorized, the Court found that it was void even though the defendant had accepted it as part of his plea agreement.  *Id.* at 302-03.  Similarly, Duncan's sentence fell outside the statutorily permissible range existing at the time of his guilty plea.  In *Phon*, the

statutory scheme had not changed and there was no case law holding that the sentencing limits could be waived.[3]  In *McClanahan*, by contrast, the Court specifically overruled its own prior precedent holding that a defendant could waive the statutory maximum sentence.

Nevertheless, we find that this distinction is not controlling.  The Court in *McClanahan* expressly held such sentences to be outside of the jurisdiction of the court to impose and therefore void *ab initio*.  *McClanahan*, 308 S.W.3d at 701.  Since we are constrained to follow the directives set out in *McClanahan* and *Phon*, we cannot continue to apply the holdings in *Rothfuss* and its progeny.[4]  *See* SCR[5] 1.030(8)(a).

Generally, a trial court's denial of a CR 60.02 motion will not be overturned absent an abuse of discretion.  *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011).  However, a void judgment is a legal nullity, and a court has no discretion in determining whether it should be set aside.  *Phon*, 545 S.W.3d at 307

---

[3] We note, however, that the Kentucky Supreme Court had expressly authorized Phon's request to include life without parole as an available sentence.  *Commonwealth v. Phon*, 17 S.W.3d 106, 108 (Ky. 2000).

[4] We note that another panel of this Court recently reached the same conclusion in *Berry v. Commonwealth*, No. 2020-CA-0046-MR, 2021 WL 2484036 (Ky. App. Jun. 18, 2021).  That opinion was designated as "Not to Be Published."  Discretionary review was denied by the Kentucky Supreme Court on September 22, 2021.  Case No. 2021-SC-0270-D.

[5] Kentucky Rules of the Supreme Court.

(citations omitted). In this case, Duncan's twenty-seven year sentence exceeded the statutory maximum permissible at the time he entered his guilty plea. Consequently, the trial court must vacate the excess portion of Duncan's sentence and impose a new sentence in accord with the law.

Accordingly, we reverse the order of the Fayette Circuit Court denying Duncan's CR 60.02 motion, and we remand this matter with directions to vacate his sentence and impose a new sentence not to exceed twenty years.

COMBS, JUDGE, CONCURS.

ACREE, JUDGE, CONCURS IN RESULT ONLY AND FILES SEPARATE OPINION.

ACREE, JUDGE, CONCURRING: I concur but write separately to urge consideration of how Kentucky courts should address CR 60.02 motions predicated on jurisprudential changes in the law–a question that is wildly unsettled elsewhere.[6]

Notwithstanding the rule in *Teague v. Lane*,[7] this Court should review these motions following the same analysis that now-Justice Nickell used in

---

[6] *See Crutsinger v. Davis*, 140 S. Ct. 2, 3, 204 L. Ed. 2d 1188 (2019) (Sotomayor, J., concurring in denial of *certiorari*) (acknowledging a circuit split spearheaded by the Third Circuit and the Fifth Circuit concerning whether jurisprudential changes in the law constitute an extraordinary circumstance under Federal Rules of Civil Procedure 60(b)(6)).

[7] "Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 1075, 103 L. Ed. 2d 334 (1989). As such, new constitution rules of criminal procedure should be carved out of the

*Rothfuss v. Commonwealth*, No. 2010-CA-000117-MR, 2010 WL 3361769, at *1-2 (Ky. App. Aug. 27, 2010). Doing so yields the same result, but by means of a framework instructive to our circuit courts tasked with determining if CR 60.02 relief is appropriate after a change in law. As written, the majority Opinion does not offer such guidance as would optimize uniformity. To create this, it is imperative we bear in mind the case's procedural posture in the circuit court.[8]

To begin, Kentucky's CR 60.02 is nearly identical to FRCP[9] 60(b).[10] Both provide relief from a final judgment for the same five enumerated reasons, plus one catchall provision. *Compare* CR 60.02 *with* FRCP 60(b). Advocates routinely use both procedural rules to challenge convictions and sentences after a jurisprudential change in the law occurs. *See, e.g.*, *Gonzalez v. Crosby*, 545 U.S. 524, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005); *see also Phon v. Commonwealth*,

---

framework addressed here. However, it is also important to note we are not tasked with reviewing a new constitutional rule of criminal procedure. CR 60.02 is a rule of *civil* procedure and the case *sub judice*, as a CR 60.02 procedure, is also civil.

[8] Again, review of Duncan's sentence comes by way of CR 60.02(e) motion. It does not arise from the criminal proceedings themselves.

[9] Federal Rules of Civil Procedure.

[10] A federal court's handling of a FRCP 60(b) motion predicated on a change in the law is directly analogous to Kentucky circuit courts facing Kentucky's version of this motion. Both *Rothfuss* and the federal body of law analyzed in this concurrence are, at best, merely persuasive as to how to handle these motions. They are informative here because there is no discernable Kentucky authority for us to follow. *See* CR 76.28(4)(c) ("unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court.").

-11-

545 S.W.3d 284 (Ky. 2018); *Land v. Commonwealth*, 986 S.W.2d 440 (Ky. 1999); *Bynoe v. Baca*, 966 F.3d 972 (9th Cir. 2020); *Satterfield v. Dist. Att'y Philadelphia*, 872 F.3d 152 (3d Cir. 2017). Unsurprisingly, both procedural rules apply proportionally the same standard to grant relief from a final judgment.

Under CR 60.02, a court cannot grant relief from a final judgment on grounds that a jurisprudential change in the law occurred, except in "aggravated cases where there are strong equities." *Reed v. Reed*, 484 S.W.2d 844, 847 (Ky. 1972). Under FRCP 60(b)(6), district courts may only grant relief in the face of an "extraordinary circumstance." *See Ackermann v. United States*, 340 U.S. 193, 199, 202, 71 S. Ct. 209, 212-13, 95 L. Ed. 207 (1950); *Klapprott v. United States*, 335 U.S. 601, 69 S. Ct. 384, 93 L. Ed. 266 (1949). The United States Supreme Court set the goalposts for what constitutes an extraordinary circumstance in *Ackermann* and *Klapprott*. In *Ackermann*, the petitioner challenged a judgment terminating his citizenship under FRCP 60(b)(6), but the United States Supreme Court held Ackermann's situation was not extraordinary because he voluntarily chose not to appeal the judgment. *Ackermann*, 340 U.S. at 195-96, 200, 202, 71 S. Ct. at 210, 212-13. By stark contrast, in *Klapprott*, the United States federal government terminated Klapprott's United States citizenship "without evidence, a hearing, or the benefit of counsel, at a time when his Government was then holding the citizen in jail with no reasonable opportunity for him effectively to defend his right to

-12-

citizenship." *Klapprott*, 335 U.S. at 615, 69 S. Ct. at 390. In comparing the two situations, the United States Supreme Court stated Ackermann's "voluntary, deliberate, free, untrammeled choice . . . not to appeal" could "[b]y no stretch of [the] imagination" compare to Klapprott's situation. *Ackermann*, 340 U.S. at 200, 71 S. Ct. at 212.

However, federal courts display confusion when applying this standard to determine whether new Supreme Court precedent justifies using FRCP 60(b) to overturn a previous final judgment incongruent with new jurisprudential law.[11] The confusion stems from misapplication of *Gonzalez v. Crosby*, 545 U.S. 524, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005), whereby several federal circuit courts use Justice Scalia's reasoning in *Gonzalez* errantly and bar all movants from seeking relief after a jurisprudential change in the law under FRCP 60(b)(6).[12] While this may seem irrelevant, in reviewing *Rothfuss*, Justice Nickell resolved the CR 60.02(e) and (f) motion predicated on a change in law at issue there using the framework Justice Scalia utilized in *Gonzalez*.

---

[11] *See* Andrew P. Lopiano, Comment, *Dumplings Instead of Flowers: The Need for a Case-By-Case Approach to FRCP 60(B)(6) Motions Predicated on a Change in Habeas Corpus Law*, 15 LIBERTY U. L. REV. 111 (Fall 2020).

[12] Lopiano, *supra* n.11, at 124-29 (analyzing the potentially errant interpretation of *Gonzalez* giving rise to vastly disparate treatments of FRCP 60(b)(6) motions predicated on a change in the law by the federal circuit courts).

In *Gonzalez*, the petitioner filed a habeas petition twelve years after conviction, and the district court denied it because it was untimely. *Gonzalez*, 545 U.S. at 526-27, 125 S. Ct. at 2644-45. Subsequently, the United States Supreme Court changed the rules for timeliness of habeas petitions in *Artuz v. Bennett*, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000). Gonzalez brought a FRCP 60(b)(6) motion stating *Artuz* constituted an extraordinary circumstance and arguing he was entitled to relief. *Gonzalez*, 545 U.S. at 527, 125 S. Ct. at 2645. The Supreme Court denied it, stating *Artuz* was not an extraordinary circumstance. *Id.* at 536-37, 125 S. Ct. at 2650-51. To reach this conclusion, Justice Scalia first analyzed the change in the law by itself, determining that a change in the law alone is generally not enough to constitute an extraordinary circumstance. *Id.* at 536, 125 S. Ct. at 2650. ("[I]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation."); *but see Crutsinger*, 140 S. Ct. at 3 (Sotomayor, J., concurring in denial of *certiorari*) ("Several Circuits recognize that a change in . . . law, by itself, may justify Rule 60(b)(6) relief."). Justice Scalia went on to analyze the petitioner's diligence, or lack thereof, in challenging his conviction. *Gonzalez*, 545 U.S. at 537, 125 S. Ct. at 2651. This Court followed that same analytical process in *Rothfuss*. *Rothfuss*, 2010 WL 3361769, at *2.

When reviewing the CR 60.02 motion in *Rothfuss*, this Court first looked to the jurisprudential change in the law itself, addressing how *McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010), overruled *Myers v. Commonwealth* and *Johnson v. Commonwealth*,[13] which created a change in jurisprudential law. *Rothfuss*, 2010 WL 3361769 at *1-2. We decided *McClanahan* could not be applied retroactively, determining that *McClanahan* did not constitute "strong equities." *Id.* at *2. After reaching this conclusion, we then analyzed Rothfuss's diligence in challenging his conviction and the length of his sentence, stating: "we note that although his conviction is nearly a decade old and he has had ample opportunity to do so, Rothfuss has not previously attacked his conviction and sentence on any ground." *Id.* This Court determined that Rothfuss's failure to act did not create strong equities when paired with a change in the law. *Id.* By way of comparison, Rothfuss's situation appeared more like Ackermann's failure to pursue relief, and unlike the injustice Klapprott faced.

---

[13] *Myers v. Commonwealth*, 42 S.W.3d 594 (Ky. 2001); *Johnson v. Commonwealth*, 90 S.W.3d 39 (Ky. 2002), *as modified* (Jan. 13, 2003). In *Rothfuss*, this Court used these two cases for the proposition that before *McClanahan*, a criminal defendant could waive the statutory maximum for a prison sentence in a plea agreement to be incarcerated for a period longer than the statutory maximum. *Rothfuss*, 2010 WL 3361769, at *1-2.

Thus, applying *Rothfuss*,[14] and by way of analogy, *Gonzalez*, we must first decide if *McClanahan* constitutes "strong equities." Only under rare circumstances should a change in the law alone constitute strong equities for purposes of CR 60.02, similar to FRCP 60(b)(6). Otherwise, a court should weigh "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process[,]" including finality of judgments, which is relevant here. *Buck v. Davis*, 137 S. Ct. 759, 778, 197 L. Ed. 2d 1 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988)).

Fortunately for this Court, the Supreme Court of Kentucky in *Phon* impliedly engaged in this first step of analysis by discussing the equities of *McClanahan* and the unjust potential for criminal defendants to serve sentences longer than the statutory maximum–an outcome undoubtedly undermining public confidence in our criminal judicial system.

Thus, as did the majority, we can look to the Supreme Court of Kentucky's decision in *Phon* and readily conclude *McClanahan*'s change in the law alone constitutes strong equities. In *Phon*, our Supreme Court held courts could not uphold any sentence that lasts longer than the statutory maximum

---

[14] The Supreme Court of Kentucky's holding in *Phon* rebuts the conclusion in *Rothfuss* that *McClanahan* did not constitute strong equities; however, *Phon* did not reject the framework *Rothfuss* used, as discussed throughout this concurrence.

punishment. *Phon*, 545 S.W.3d at 302. This appears to be a bright-line rule with no exception and, therefore, *Phon* implicitly greenlights the majority's decision to retroactively apply *McClanahan*. Anything short of a bright-line rule here likely violates the separation of powers doctrine enshrined in Sections 27 and 28 of the Kentucky Constitution. *Id.* at 302-03. Speaking to the equities, the Supreme Court quoted *McClanahan*, stating: "Our courts must not be complicit in the violation of the public policy embedded in our sentencing statutes by turning a blind eye to an unlawful sentence, regardless of a defendant's consent." *Id.* at 302 (citing *McClanahan*, 308 S.W.3d at 701). Thus, applying this framework for reviewing CR 60.02 motions predicated on a change in the law, we can readily conclude that *McClanahan*, alone, identifies the necessary strong equities. Consequently, this Court should reverse the Fayette Circuit Court order.

However, if a jurisprudential change in the law alone did not constitute strong equities, we must continue our analysis and look to the facts and circumstances of a case–just as Justice Nickell did in *Rothfuss* and just as Justice Scalia did in *Gonzalez*. It would be unjust to require judges outright to deny relief from CR 60.02 motions predicated on a change in the law.[15] As the Third Circuit stated, a court addressing a post-conviction motion for relief from a judgment

---

[15] *See* Lopiano, *supra* n.11, at 147-50; *see also Satterfield v. Dist. Att'y Philadelphia*, 872 F.3d 152 (3d Cir. 2017).

"must examine the full panoply of equitable circumstances . . . before rendering a decision." *Satterfield*, 872 F.3d at 155. Taking this approach would put our courts in lockstep with the Sixth Circuit, which stated "the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors[.]" *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007) (citations omitted).

For the reviewing court in Kentucky, the ultimate question may become whether a CR 60.02 movant diligently pursued all avenues of relief, because of the heavy emphasis placed on this consideration in *Gonzalez* and *Rothfuss*. This would be in line with other unpublished cases from this Court. In *Commonwealth v. Hayes*, this Court reversed relief granted pursuant to a CR 60.02 motion predicated on a change in the law where the movant was convicted forty years before the motion, but his CR 60.02 motion came thirty-five years after the change in law. *Commonwealth v. Hayes*, No. 2010-CA-001021-MR, 2011 WL 1812406, at *1-2 (Ky. App. May 13, 2011). Outside the movant's diligence, the Third Circuit provided a wealth of equitable factors to consider, which could further enhance our court's ability to determine when a change in the law, when paired with equitable factors, constitutes sufficiently strong equities that relief should be granted pursuant to CR 60.02. The Third Circuit's factors include:

> [1] the general desirability that a final judgment should not be lightly disturbed; [2] the procedure provided by

Rule 60(b) is not a substitute for an appeal; [3] the Rule should be liberally construed for the purpose of doing substantial justice; [4] whether, although the motion is made within the maximum time, if any, provided by the Rule, the motion is made within a reasonable time; . . . [5] whether there are any intervening equities which make it inequitable to grant relief; [6] any other factor that is relevant to the justice of the [order] under attack.

*Lasky v. Cont'l Prods. Corp.*, 804 F.2d 250, 256 (3d Cir. 1986) (alteration in original).

Regardless of whether Appellant here vigorously challenged his appeal, that factor could potentially carry less weight because Appellant is not challenging his conviction, but rather the length of his sentence. Thus, the Third Circuit's factors could supplement and inform our analysis where a change in the law alone might not be sufficient to constitute the necessary strong equities.

Because Appellant challenges his sentence by means of CR 60.02, predicated on a change in the law, and because there is no existing precedent explaining how Kentucky courts should proceed, we should analyze the motion under the framework outlined here. That approach is consistent with *Rothfuss*, this Court's unpublished decisions, and the large swath of federal caselaw discussed.

I believe the majority reached the correct result, but it does not appear to have reached that result in this same way. However, because the result is the same, I concur.

BRIEFS FOR APPELLANT:

Whitney B. Browning
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky